UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EDUARDO BURKETT, GUILLAUME FOSS, and
VIRGINIA ORTIZ, individually and on behalf of
all persons similarly situated,

                                        Plaintiffs,


                    -against-


HOUSLANGER & ASSOCIATES, PLLC,
TODD HOUSLANGER, and BRYAN BRYKS,

                                        Defendants.

No. 19 Civ. 2285


CLASS ACTION
COMPLAINT

DEMAND FOR JURY TRIAL


## PRELIMINARY STATEMENT

1.      Plaintiffs and hundreds of putative Class Members bring this action to challenge the unlawful scheme operated by Defendants Houslanger & Associates, PLLC, a debt collection law firm, and Todd Houslanger and Bryan Bryks, two attorneys at that firm, to extract money from consumers by improperly executing on old New York City Civil Court judgments. In doing so, Defendants systematically flout consumer protections in order to enrich themselves at the expense of Plaintiffs and the Class.

2.      Plaintiff Eduardo Burkett was going about his life when, out of nowhere, he received an income execution from Defendants that threatened to garnish his paycheck. The execution was from a law firm he had never heard of, on behalf of a company he had never heard of, to collect on a purported judgment issued in a case against him *more than fifteen years earlier* that he had never heard of, brought by a different company he had never heard of, and in which he had never been served.

1

3.     Defendants' practices in preparing the executions were improper and unlawful in numerous respects, though Mr. Burkett had no way of knowing that at the time. Through his own tenacity and with the eventual assistance of counsel, Mr. Burkett fought for nine months, during which he went to court five times (missing work each time), and was eventually able to stop the execution and get back the money that had been garnished.

4.     The same thing happened to Plaintiff Guillaume Foss, over the course of fourteen months, to Plaintiff Virginia Ortiz, over eight months, and to many other Class Members. Although all three Plaintiffs were able to eventually prevail by showing that they were never served and the judgments were unlawfully obtained, all three Plaintiffs expended time and money for which they were never recompensed.  Other putative Class Members were not as fortunate, and have paid over money that Defendants should never have collected.

5.     Defendants' formula for extracting money from New York City consumers involves the following steps: First, the judgment buyers they represent purchase old judgments on allegedly unpaid consumer debt. The judgments they buy were obtained years, if not decades ago, by debt buyers—companies that buy debt from original creditors. These judgment buyers buy the judgments on the cheap, because the judgments are almost always legally flawed and of questionable collectability; it is well-documented that New York City Civil Court judgments won by debt buyers are often based on "sewer service" (that is, fake service), and on the basis of insufficient proof.

6.     Defendants acquire virtually no documentation in connection with these judgments: not the judgments themselves, not the affidavits of service in the underlying litigation, not documentation substantiating the judgments' chain of title, and not the case file.

2

7.    Then, Defendants proceed to execute on the judgments against Class Members, violating laws designed to protect consumers at every turn:

- They execute without conducting any meaningful attorney review (they have virtually no documents to review);
- They fail to send any legally required notices;
- They needlessly prolong legal proceedings, even when confronted with incontrovertible evidence that their collection is improper, in order to wear down Class Members;
- They make misrepresentations to the court and to Class Members;
- They extract settlements that include provisions designed to insulate them from liability for their misconduct; and
- They refuse to return Class Members' funds even when court-ordered to do so.

Most Class Members eventually give up. And in this way, Defendants are able to turn the poorest quality judgments, many of which were unlawfully obtained, into lucrative collections for themselves and their clients.

8.    Defendants' conduct is ongoing and harms additional Class Members every day.

9.    Plaintiffs bring this action on behalf of themselves and a Class consisting of individuals against whom Defendants executed on judgments obtained in New York City Civil Court on behalf of a judgment creditor that did not originally obtain the judgment.

10.    Plaintiffs allege that Defendants' practices violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the FDCPA), New York General Business Law § 349, and New York Judiciary Law § 487. They bring this action to seek redress for themselves and hundreds of similarly situated Class Members victimized by Defendants' conduct.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and supplemental jurisdiction over the state law claims

pursuant to 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201(a) and 2202.

12.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because it is the district where a substantial part of the events giving rise to Plaintiffs' claims occurred—namely, it is the district in which Defendants issued an income execution to Ms. Ortiz and the district in which Defendants filed and litigated lawsuits against Mr. Foss and Ms. Ortiz.

## PARTIES

13.      Plaintiff Eduardo Burkett is a natural person residing in the Bronx, New York.

14.      Plaintiff Guillaume Foss is a natural person residing in Manhattan, New York.

15.      Plaintiff Virginia Ortiz is a natural person residing in Brooklyn, New York.

16.      Each Plaintiff is a "consumer" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3), in that each Plaintiff was alleged to owe a debt stemming from an unpaid balance on a consumer account.

17.      Defendant Houslanger & Associates, PLLC ("H&A") is a domestic professional service limited liability company organized under the laws of the State of New York with its principal place of business located at 372 New York Ave., Huntington, New York 11743.

18.      H&A is a debt collection law firm that specializes in judgment enforcement. H&A is registered as a debt collection agency with the New York City Department of Consumer Affairs, with license number 2033286-DCA.

19.      H&A engages in efforts to collect debt from approximately 5,000 New York City consumers each year.

20.      Defendant Todd Houslanger ("Houslanger") is a natural person and a member of the New York Bar. He is a debt collection attorney and the managing attorney at H&A. He has

held leadership roles in trade associations for debt collection lawyers, including the Consumer Credit Association of Metropolitan New York, the Creditor's Rights Law Committee of the Suffolk County Bar Association, and the Commercial Lawyers Conference Collection Bar.

21.     Defendant Bryan Bryks ("Bryks") is a natural person and a member of the New York Bar. He is a debt collection attorney and a member of the law firm H&A, and is registered with the New York State bar as a member of H&A.

22.     Defendants are all "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6), in that Defendants regularly use the instrumentalities of interstate commerce in their businesses, the principal purpose of which is the collection of debts, and are engaged in the business of collecting consumer debts via various means, including wage garnishment, bank restraint and levy, and civil debt collection lawsuits.

## FACTUAL ALLEGATIONS

23.     Defendants are debt collection attorneys who have garnished the wages and restrained the bank accounts of hundreds of New York City consumers on behalf of their judgment buyer clients.  In the course of these collections, Defendants systematically engaged in unlawful conduct and violated numerous protections put in place to protect consumers.

24.     Defendants represent judgment buyers: entities that purchase New York City Civil Court judgments for a fraction of their face value.

25.     The companies that originally obtained these judgments were themselves debt buyers: entities that purchased debts, often for pennies on the dollar, and attempted to collect on those debts for profit.

26.     Many of the debt buyers that obtained judgments against Class Members are now defunct.

27.     The New York State Unified Court System has documented that many debt buyers unlawfully obtained judgments "on the basis of insufficient or incorrect factual proof or hearsay testimony" and "sewer service," the practice of failing to lawfully serve a summons and complaint and then filing a fraudulent affidavit of service.[1]

28.     The judgment buyers represented by Defendants bought judgments against Mr. Burkett, Mr. Foss, Ms. Ortiz, and members of the putative Class. The judgment buyers purchased these judgments either from the debt buyers that originally obtained the judgments or, more often, from other judgment buyers.

29.     Thus, at the time Defendants executed on judgments against Class Members, each obligation had been sold at least twice (from the original creditor to the debt buyer, and from the debt buyer to the judgment buyer).

30.     When Defendants executed against Mr. Burkett and Mr. Foss, each of their obligations had been sold at least four times.

31.     On information and belief, the obligations of many Class Members were sold multiple times.

32.     The judgments against Mr. Burkett and Mr. Foss on which Defendants executed were issued in 2002 and 2003, and the judgment against Ms. Ortiz was issued in 2007. The alleged debts underlying them were years older.

33.     The judgments against other Class Members on which Defendants executed were also many years old. Most were obtained between approximately 2002 and 2008. The purported debts underlying the judgments were even older. Most were purportedly incurred in the 1990s and early 2000s.

---

[1] N.Y. Unified Court Sys., *NY Court System Adopts New Rules to Ensure a Fair Legal Process in Consumer Debt Cases* (Sept. 16, 2014), *available at* http://ww2.nycourts.gov/sites/default/files/document/files/2018-05/PR14_06.pdf.

34.    Defendants did not represent the debt buyers who obtained the judgments. The debt buyers were represented by other counsel. Many of those law firms are now defunct.

35.    On information and belief, Defendants were and continue to be compensated for their collection activity by retaining a portion of funds collected.

36.    Defendants have engaged in their unlawful conduct knowingly and willfully.

37.    Defendants' conduct is ongoing, and will continue absent court intervention.

**A. Defendants Executed on Judgments with Virtually No Documentation or Attorney Review**

38.    Defendants executed on the judgments against Mr. Burkett, Mr. Foss, Ms. Ortiz, and the Class Members by wage garnishment or bank account restraint/levy. *See* N.Y. C.P.L.R. §§ 5222 (bank restraint), 5231 (garnishment), 5232 (levy).

39.    Executions are issued by attorneys in their role as "as officer[s] of the court." *See id.* §§ 5222(a), 5230(b).

40.    To execute by wage garnishment, Defendants issued an income execution, and sent it to the New York City marshal, who was required to serve it on the consumer. *See id.* § 5231(b), (d).

41.    To execute by bank restraint (which freezes a consumer's bank account), Defendants issued a restraining notice, and sent it to the Class Member's bank, which was required to serve it on the consumer. *See id.* §§ 5222(a), (d), 5222-a(b). On information and belief, in some cases Defendants later issued a levy on the bank account (which withdraws funds from the consumer's account). *See id.* § 5232.

42.    On information and belief, Defendants reviewed virtually no documentation and engaged in no meaningful attorney review before issuing income executions against Mr. Burkett, Mr. Foss, and Ms. Ortiz.

43. On information and belief, Defendants reviewed virtually no documentation and engaged in no meaningful attorney review before issuing income executions and bank restraints against other Class Members.

44. Specifically, on information and belief, Defendants did not review, for Mr. Burkett, Mr. Foss, Ms. Ortiz, and other Class Members: (a) a copy of the judgment Defendants were purporting to enforce; (b) an affidavit of service attesting to proper service in the underlying lawsuit; (c) documentation of the chain of title establishing that the judgment buyer owned the judgment; or (d) any contents of the case file of the underlying lawsuit.

45. On information and belief, the judgment buyers that Defendants represented did not obtain copies of these documents when they purchased the judgments; Defendants did not otherwise obtain these documents; and Defendants thus did not possess them at the time Defendants executed.

46. First, Defendants did not review the judgments entered against Mr. Burkett, Mr. Foss, and Ms. Ortiz before executing on those judgments as "officer[s] of the court."

47. On information and belief, Defendants did not review the judgments against Class Members before executing on those judgments as "officer[s] of the court."

48. Without reviewing the judgments, Defendants routinely issued income executions and bank restraints against Class Members which were based on facially invalid judgments or which contained other errors, such as stating an incorrect judgment amount.

49. For example, Defendants issued two income executions against Mr. Foss, both based on judgment amounts that exceeded the actual amounts of the judgments against him.

50. Second, Defendants did not review the affidavits of service filed in the underlying lawsuits against Mr. Burkett, Mr. Foss, and Ms. Ortiz.

8

51.     On information and belief, Defendants did not review the affidavits of service filed in the underlying lawsuits against Class Members.

52.     Without reviewing the affidavits of service, they often executed on judgments—including those against Mr. Burkett, Mr. Foss, and Ms. Ortiz—that were obtained through "sewer service" and were thus invalid.

53.     In many instances, reviewing the affidavits of service filed in the cases underlying the judgments would have revealed that service was facially improper.

54.     For example, the affidavit of service filed in one of the cases against Mr. Foss purported to serve process in a *different case*, brought by a *different debt buyer*.

55.     In other instances, review of the affidavits of service filed in the cases underlying the judgments would have created a strong inference that service was improper.

56.     For example, the now-defunct law firm that represented the debt buyers in the underlying cases against Mr. Burkett and Ms. Ortiz was sued in a class action for systematically engaging in sewer service and entered a $59 million settlement. *See Sykes v. Mel S. Harris & Associates, LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010).

57.     In another example, the process server who purported to serve Ms. Ortiz was sued in that same class action. Eventually, the New York City Department of Consumer Affairs denied the renewal of his process serving license, explaining that his repeated violations demonstrated that he "lack[ed] the integrity, honesty, and fair dealing required of" licensed process servers.

58.     Third, on information and belief, Defendants did not review documentation establishing that Defendants or the judgment buyers they represented had the authority to execute on the judgments against Mr. Burkett, Mr. Foss, and Ms. Ortiz.

59.     On information and belief, Defendants did not review documentation establishing that Defendants or the judgment buyers they represented had the authority to execute on the judgments against Class Members.

60.     On information and belief, to the extent Defendants reviewed any such documentation, that documentation was insufficient to establish that Defendants or the judgment buyers they represented had the authority to execute on the judgments.

61.     Fourth, Defendants did not review any of the documents contained in the case file of the lawsuits underlying the judgments against Mr. Burkett, Mr. Foss, and Ms. Ortiz.

62.     On information and belief, Defendants did not review any of the documents contained in the case files of the lawsuits underlying the judgments against Class Members.

63.     Defendants did not obtain the case files from their judgment buyer clients or from prior counsel. Nor did Defendants take other steps to obtain them.

64.     The New York City Civil Court maintains case files over three years old (up to twenty-five years old) in the city's archive for off-site storage. It takes approximately ten weeks for a requested archived file to become available for inspection. Any person can request an archived case file for free at any time.

65.     On information and belief, Defendants never requested case files before executing on judgments.

66.     Defendants thus executed without knowing whether documents in those files showed that the judgments or the executions were improper, or created a strong inference that the judgments or executions were improper.

67.     On information and belief, Defendants did not review whether the case files contained documents showing that the judgment had been satisfied; documents reflecting

litigation activity following the entry of the judgments; prior notices of assignment of judgment; and prior change of attorney forms.

68.     For example, if Defendants had reviewed the case file in the case against Mr. Burkett, they would have learned that they did not have proper authorization to proceed as substitute counsel for the judgment buyer.

69.     Likewise, on information and belief, Defendants did not review the applications for default judgment submitted by the debt buyers that brought the lawsuits. In many instances, a review of the applications for default judgment by the debt buyers would have revealed that the judgments were obtained on the basis of insufficient proof.

70.     For example, if Defendants had reviewed the applications for default judgment in the cases against Mr. Foss, they would have learned that the supporting affidavits were facially invalid because they were not notarized correctly.

71.     Defendants have been sued numerous times for issuing income executions and bank restraints without conducting meaningful attorney review. *See Balthazar v. Houslanger & Associates, PLLC et al.*, No. 16-cv-04982, 2018 WL 3941943 (E.D.N.Y. Aug. 16, 2018), *Levy v. Platinum Financial Services Corp. et. al.*, No. 18-cv-06936 (E.D.N.Y Dec. 5, 2018), *Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636 (S.D.N.Y. 2013*), Stinson v. Houslanger & Associates PLLC et al.*,  No. 18-cv-11350 (S.D.N.Y 2018), *Sanders v. Houslanger and Associates, PLLC*, No. 17-cv-8985 (S.D.N.Y 2017), *Olajide, et al. v. Palisades Collection, LLC et al.*, 15-cv-07673 (S.D.N.Y. 2015).

**B. Defendants Did Not Send Any Notices Required By Law**

72.     Mr. Burkett, Mr. Foss, and Ms. Ortiz did not receive any notices that the law required Defendants to send. Specifically, they did not receive (a) a notice of the assignment of

11

judgment; (b) a change of attorney form; or (c) a notice of their rights to validate the debt.

73.     On information and belief, Defendants did not send any of these notices to Mr. Burkett, Mr. Foss, Ms. Ortiz, and other Class Members.

74.     Each time a judgment is assigned, the judgment buyer must file an assignment of judgment with the court, and serve a copy on the party against whom the judgment was entered. N.Y. C.P.L.R. § 5019(c). That party must receive actual notice of the assignment. *Id.*; *Tri City Roofers, Inc. v. Northeastern Industrial Park*, 461 N.E.2d 298, 299 (N.Y. 1984).

75.     Neither the judgment buyers nor Defendants filed with the court any assignments of judgment documenting the judgment buyers' purchase of the judgments against Mr. Burkett, Mr. Foss, and Ms. Ortiz.

76.     Mr. Burkett, Mr. Foss, and Ms. Ortiz did not receive any assignments of judgment. On information and belief, neither the judgment buyers nor Defendants served assignments of judgment on Mr. Burkett, Mr. Foss, and Ms. Ortiz.

77.     On information and belief, the judgment buyers and Defendants routinely failed to file with the court any assignments of judgment documenting the judgment buyers' purchase of the judgments against Class Members, and the judgment buyers and Defendants routinely failed to serve those documents on Class Members.

78.     Each time a new attorney appears in a case, he or she must file a change of attorney form and serve it on the opposing party. N.Y. C.P.L.R. § 321(b).

79.     Mr. Burkett, Mr. Foss, and Ms. Ortiz never received change of attorney forms.

80.     On information and belief, Defendants did not serve change of attorney forms on Mr. Burkett, Mr. Foss, and Ms. Ortiz.

81.     On information and belief, Defendants did not serve, and often did not file,

changes of attorney forms on other Class Members.

82.     In its initial communication with a consumer, or within five days thereafter, each debt collector must send a "validation notice" that informs the consumer of certain legal rights, including to dispute the debt and to be provided with the name and address of the original creditor. 15 U.S.C. § 1692g(a).

83.     Mr. Burkett, Mr. Foss, and Ms. Ortiz never received validation notices from Defendants or the judgment buyers.

84.     On information and belief, Defendants did not send validation notices to Mr. Burkett, Mr. Foss, and Ms. Ortiz.

85.     On information and belief, Defendants did not send validation notices to other Class Members.

86.     Receipt of the assignment of judgment, the change of attorney form, or the validation notice would have alerted Mr. Burkett, Mr. Foss, and Ms. Ortiz to the existence of the lawsuits and judgments against them and to the identities of the entities attempting to collect on the judgments.

87.      Defendants have been sued multiple times for failing to file and serve assignments of judgment and notices of change of attorney forms, and for failing to send validation notices. *See Balthazar*, 2018 WL 3941943, *Levy* (E.D.N.Y Dec. 5, 2018), *Musah* (S.D.N.Y. 2013*), Stinson* (S.D.N.Y 2018), *McCrobie v. Palisades Acquisition XVI, LLC et al.*, No. 15-cv-00018 (W.D.N.Y. 2015), *Okyere v. Palisades Collection, LLC et al.*, No. 12-cv-01453 (S.D.N.Y 2012).

**C. When Plaintiffs and Class Members Challenged the Executions, Defendants Filed Deceptive Court Documents**

88.     Mr. Burkett, Mr. Foss, and Ms. Ortiz were never served in the lawsuits underlying the judgments on which Defendants executed, were never notified of the judgments against them, and never received notices of assignment or other notices regarding the judgments. As a result, Mr. Burkett, Mr. Foss, and Ms. Ortiz first learned about the judgments and the underlying lawsuits when they received income executions issued by Defendants.

89.     When they received the income executions, Mr. Burkett, Mr. Foss, and Ms. Ortiz did not recognize the name of the debt buyer that obtained the judgments against them, the name of the judgment buyer, or Defendants; did not understand why or how they had been sued; and did not initially know what steps to take to stop the executions.

90.     Mr. Burkett, Mr. Foss, and Ms. Ortiz believe that they never owed the debts allegedly underlying the lawsuits and the judgments against them.

91.     On information and belief, because most if not all Class Members were never properly served in the lawsuits underlying the judgments on which Defendants executed, were never notified of the judgments against them, and never received notices of assignment or other notices regarding the judgment, they too first learned about the judgments and the underlying lawsuits when they received income executions or bank restraints issued by Defendants.

92.     On information and belief, most if not all Class Members did not recognize the name of the debt buyer that obtained the judgment against them, the name of the judgment buyer, or Defendants; did not understand why or how they had been sued; and did not initially know what steps to take to stop the execution.

93.    Seeking to understand the income execution she received, Ms. Ortiz contacted Defendants. Defendants asked her to settle for the full judgment amount. Ms. Ortiz rejected the offer.

94.    On information and belief, some Class Members in this position were unable to determine any steps to take to stop the garnishment or restraint. Others contacted Defendants to inquire about the income execution or bank restraint, and accepted settlement offers like the one presented to Ms. Ortiz. As a result, Defendants were able to seize the funds of these Class Members on the basis of improper executions.

95.    Consumers who want to stop wage garnishment or bank restraint/levy may move to vacate the judgment in the Civil Court that issued it. *See* N.Y. C.P.L.R. § 5015(a). In New York City Civil Court, a Motion to Vacate the Judgment ("Motion to Vacate") is typically brought by order to show cause.  Consumers who were not served in the underlying lawsuit can challenge the execution by filing a Motion to Vacate for lack of personal jurisdiction. *See* N.Y. C.P.L.R. §§ 5015(a)(4); 3211(a)(8).

96.    Mr. Burkett, Mr. Foss, and Ms. Ortiz filed Motions to Vacate for lack of personal jurisdiction, acting *pro se*.

97.    On information and belief, many Class Members filed such motions, and virtually all did so *pro se*.

98.    In response to Mr. Burkett's, Mr. Foss's, and Ms. Ortiz's Motions, Bryks, on behalf of H&A, filed and served a standard form Affirmation in Opposition ("Opposition") to the Motions.

99.    Bryks signed these Oppositions under penalty of perjury.

100.    The Oppositions contained boilerplate language and were virtually identical to one another, except for identifying details (for example, the individual's name and the alleged amount of debt owed) and certain dates.

101.    Under New York law, a judgment creditor's "opposition to a motion based on improper service shall contain a copy of the proof of service." *Id.* § 3211(e).

102.    The Oppositions in the cases against Mr. Burkett, Mr. Foss, and Ms. Ortiz did not contain an affidavit of service. The Oppositions against Mr. Burkett and Ms. Ortiz stated that "[a] copy of the Affidavit of Service is unavailable to be attached to this opposition."

103.    The Oppositions did not contain any facts regarding service, such as how or when Mr. Burkett, Mr. Foss, and Ms. Ortiz were allegedly served.

104.    Nonetheless, each Opposition stated that "[u]pon information and belief, the [consumer] was properly served in this matter."

105.    This statement was false. Mr. Burkett, Mr. Foss, and Ms. Ortiz were not properly served.

106.    The Oppositions did not contain copies of the judgments. Each Opposition stated that "[a] copy of the Judgment is unavailable to be attached to this opposition."

107.    Nonetheless, each Opposition stated that "[a]ny and all restraints of bank accounts . . . or garnishment of wages, resulted from the proper execution of a judgment of this Court, lawfully obtained and issued therefrom."

108.    This statement was false. The judgments against Mr. Burkett, Mr. Foss, and Ms. Ortiz were not lawfully obtained, due to improper service and/or insufficient proof. The executions were not proper, because, among other things, Defendants had no proof of the chains of title, and had not sent the required notices.

109.   The Oppositions further stated that the judgment buyers represented by Defendants were the "successor[s]" to the debt buyers that originally obtained the judgments.

110.   The Oppositions attached documents purporting to establish that Defendants and the judgment buyers they represented had the authority to execute on the judgments.

111.   These documents were insufficient to establish that Defendants and the judgment buyers they represented had the authority to execute on the judgments..

112.   For example, Bryks attached to the Opposition to Mr. Burkett's Motion to Vacate only two expired "limited power[s] of attorney," neither of which established ownership of the debt.

113.   Each of Bryks's representations in the Oppositions was made without a reasonable basis and without having undertaken any investigation that could have led to a good faith belief in its truth.

114.   On information and belief, Bryks filed and served virtually identical Oppositions in other cases in which Class Members filed Motions to Vacate, each of which contained the same representations described above.

115.   On information and belief, all of these representations were made without a reasonable basis and without an investigation that could have led to a good faith belief in their truth, and many of them were false.

116.   Defendants' filing of Oppositions without a good faith basis to do so had the effect of unduly prolonging legal proceedings against Class Members.

**D.  Defendants Unduly Prolonged Legal Proceedings**

117.   Defendants unduly prolonged the legal proceedings against Mr. Burkett, Mr. Foss, and Ms. Ortiz. On information and belief, Defendants did so to induce those individuals to drop

their challenges to the executions or enter settlements favorable to Defendants.

118.    Defendants refused to vacate judgments even after Mr. Burkett, Mr. Foss, and Ms. Ortiz presented them with overwhelming evidence that their executions were improper and the judgments invalid. For example, Mr. Burkett presented eight pieces of proof that he was not served.

119.    Defendants' actions, including their refusal to vacate judgments, resulted in Mr. Burkett, Mr. Foss, and Ms. Ortiz having to attend multiple court dates over the span of many months.

120.    The court ultimately vacated the judgments and dismissed the cases against Mr. Burkett, Mr. Foss, and Ms. Ortiz.

121.    On information and belief, Defendants unduly prolonged the legal proceedings against other Class Members through similar conduct.

122.    On information and belief, Defendants' unlawful conduct caused many Class Members to drop their challenges to Defendants' executions or enter settlements favorable to Defendants.

123.    Defendants have been repeatedly sued for unduly prolonging legal proceedings in the face of overwhelming evidence. *See Levy* (E.D.N.Y Dec. 5, 2018), *Stinson* (S.D.N.Y 2018), *Okyere* (S.D.N.Y 2012), *Sanders* (S.D.N.Y 2017), *Olajide* (S.D.N.Y. 2015).

**E.  Defendants Sought Deceptive Releases Designed to Insulate Them from Liability**

124.    Defendants sought Mr. Burkett's and Ms. Ortiz's agreement to a Stipulation (the "Stipulation") that contained a release of potential claims (the "Release") in exchange for Defendants' agreement to cease execution and vacate the judgments against them.

125.    Defendants designed the Release to insulate them from liability for their unlawful conduct.

126.    Specifically, the Release stated that the consumer would:

release and forever discharge [the judgment buyer], [the debt buyer], [the original creditor], Houslanger & Associates, PLLC, its former, present and future parents, subsidiaries and/or affiliates, whether direct or indirect, and any and all former, present and future officers, directors, employees, representatives, predecessors, successors, agents, attorneys, independent contractors or assigns from any and all claims, demands, liabilities, damages, losses or expenses relating to the account and attempts to collect same, including any and all alleged improper debt collection acts, including claims alleged to be based upon federal FDCPA and/or other New York laws which may govern the collection of debts, from the beginning of time to the date of execution of this agreement by all parties.

127.    The Stipulation also stated that "any sums previously [collected], if any, may be retained by" Defendants.

128.    On information and belief, Defendants sought many other Class Members' agreement to the Release as a condition of ceasing execution and vacating judgments against them.

129.    Defendants have been sued for seeking Releases in an attempt to insulate themselves from liability for their unlawful conduct. *See Levy* (E.D.N.Y Dec. 5, 2018), *Stinson* (S.D.N.Y 2018), *Olajide* (S.D.N.Y. 2015).

**F.  Defendants Withheld Funds They Were Ordered to Return**

130.    Defendants were ordered to return all funds collected pursuant to judgments against Mr. Burkett and Mr. Foss. *See* N.Y. C.P.L.R. § 5015(d).

131.    Defendants refused to comply with these orders.

132.    For example, Mr. Foss had to wait over six months and engage in extensive advocacy to receive his funds.

133.    On information and belief, Defendants routinely refused to comply with orders to return funds issued in cases against other Class Members.

134.    Defendants have been sued in the past for failing to return funds to consumers as ordered. *See Okyere* (S.D.N.Y 2012).

**G. Defendants' Conduct Caused Harm to Plaintiffs and Class Members**

135.    Defendants' unlawful activities harmed Mr. Burkett, Mr. Foss, and Ms. Ortiz.

136.    Defendants' unlawful activities harmed hundreds of other Class Members.

137.    These harms included, but were not limited to: deprivation of funds (temporary or permanent) due to garnished wages, restrained or levied bank accounts, or settlements; time and money spent to appear at multiple court dates and otherwise challenge the executions, including lost wages due to missed work, postage, photocopying, transportation, and childcare; and actual and emotional damages.

138.    Defendants' actions are ongoing and will cause further harm to Class Members absent Court intervention.

## FACTS CONCERNING NAMED PLAINTIFFS

*Eduardo Burkett*

139.    Plaintiff Eduardo Burkett is a seventy year old resident of the Bronx, New York. Mr. Burkett works as a certified nursing assistant at a nursing home.

140.    On or after April 20, 2018, Mr. Burkett received a Notice of Garnishment and income execution from New York City Marshal Ronald Moses.

141.    The documents stated that Mr. Burkett owed $1,294.44, plus nearly $2,000 in interest and fees, to satisfy a judgment in *New Century Financial Services Inc. v. Eduardo Burkett* ("*New Century v. Burkett*"), Index Number 43924-02/BX, in New York City Civil Court,

Bronx County.

142.    The income execution stated that the debt was owed to Aquarius Capital, LLC ("Aquarius"). The income execution was signed by Houslanger.

143.    Mr. Burkett had never heard of *New Century v. Burkett*. He was never served with a summons and complaint in that action. He had no other notice of the action or the judgment, and never received an assignment of judgment, a change of attorney form, or a validation notice. Mr. Burkett had never heard of Aquarius, New Century Financial Services, Inc. ("New Century"), or Defendants.

144.    Unbeknownst to Mr. Burkett, New Century had filed *New Century v. Burkett* against him on April 4, 2002, as an assignee of an alleged credit card debt from BankFirst.

145.    The law firm Mel S. Harris and Associates, LLC represented New Century in *New Century v. Burkett*.

146.    On August 8, 2002, a default judgment was entered against Mr. Burkett in the amount of $1,294.44.

147.    The Consumer Financial Protection Bureau entered into a consent decree with New Century, based on its finding that New Century regularly made "unsubstantiated court filings" in order to obtain judgments based on "unreliable or false information" and "flimsy or nonexistent evidence," in violation of the FDCPA.[2]

148.    In support of its application for default judgment, New Century submitted an affidavit of service in which process server Matthew Roth swore that he served Mr. Burkett on March 30, 2002, by affixing a copy of the summons and complaint to the door of Mr. Burkett's residence at 2154 Grand Avenue, 1st Floor, Bronx, NY, ("2154 Grand") and mailing the

---

[2] *See* Consumer Fin. Protection Bureau, *CFPB Takes Action to Halt Illegal Debt Collection Practices By Lawsuit Mill and Debt Buyer* (Apr. 25, 2016), *available at* https://www.consumerfinance.gov/about-us/newsroom/cfpb-takes-action-halt-illegal-debt-collection-practices-lawsuit-mill-and-debt-buyer/.

summons and complaint to the same address.

149.    However, Mr. Burkett did not live at 2154 Grand on March 30, 2002. He lived at a transitional housing shelter for homeless families at 2720 Broadway, New York, NY ("2720 Broadway") with his young son.

150.    According to Defendants, the *New Century v. Burkett* judgment was sold from New Century to Sherman Acquisition, LLC (a Nevada LLC) in 2007, and sold by Sherman Acquisition, LLC (a Delaware LLC) to Aquarius in 2009.

151.    No assignments of judgment were filed in *New Century v. Burkett*.

152.    On information and belief, Aquarius retained H&A to execute on the judgment.

153.    On April 17, 2018, Houslanger issued the income execution later received by Mr. Burkett.

154.    On information and belief, before issuing the income execution, neither Houslanger nor anyone at H&A possessed or reviewed the *New Century v. Burkett* judgment, affidavit of service, documents establishing a chain of title for the judgment, or the case file.

155.    Mr. Burkett did not know how to challenge the income execution. A financial advisor directed him to Bronx Civil Court.

156.    On April 26, 2018, Mr. Burkett filed in Bronx Civil Court a *pro se* Motion to Vacate the *New Century v. Burkett* judgment, with assistance from Civil Legal Advice and Resource Office ("CLARO"),[3] which provides free assistance preparing court papers to *pro se* consumers. He also filed an affidavit stating that he was never served and that he first learned of the lawsuit from the execution he recently received. Mr. Burkett could not review any documents in the court file because it was being held in the archive.

---

[3] *See* www.claronyc.org; *see also* N.Y. Unified Court Sys., *New York State Court Access to Justice Program*, *available at* http://www.nycourts.gov/ip/nya2j/.

157.    On May 23, 2018, the first court date for Mr. Burkett's motion, Bryks filed and served an Opposition to Mr. Burkett's Motion, sworn under penalty of perjury.

158.    On information and belief, neither Bryks nor anyone at H&A possessed or reviewed the judgment, the affidavit of service, the documents establishing chain of title, or the case file in *New Century v. Burkett* prior to filing the Opposition.

159.    The Opposition did not attach the affidavit of service. In the Opposition, Bryks stated that "[a] copy of the Affidavit of Service is unavailable to be attached to this opposition." The Opposition did not contain any specific facts regarding service, such as how or when Mr. Burkett was allegedly served.

160.    Nonetheless, in the Opposition, Bryks stated that "[u]pon information and belief, [Mr. Burkett] was properly served in this matter."

161.    This representation was false. Mr. Burkett was never served.

162.    In the Opposition, Bryks stated that "[a] copy of the Judgment is unavailable to be attached to this opposition."  Nonetheless, the Opposition stated that "[a]ny and all . . . garnishment of wages[] resulted from the proper execution of a judgment of this Court, lawfully obtained and issued therefrom."

163.    This representation was false. The judgment was not lawfully obtained, because Mr. Burkett was never served. The execution was not proper, because, among other things, Defendants had no proof of the chain of title, and had not sent the required notices.

164.    The Opposition further stated that Aquarius was the "successor" to New Century. In support of this statement, Bryks attached only two expired "limited power of attorney" documents.

23

165.    Those documents did not establish Aquarius's or Defendants' authority to execute on the judgment.

166.    Each of Bryks's representations in the Opposition were made without a reasonable basis and without having undertaken any investigation that could have led to a good faith belief in their truth.

167.    Defendants unduly prolonged the legal proceedings against Mr. Burkett. On information and belief, Defendants did so to induce Mr. Burkett to drop his challenge to the execution or enter into a settlement favorable to Defendants.

168.    *New Century v. Burkett* was adjourned for a second court date.

169.    In May and June 2018, Mr. Burkett's employer garnished a total of $343.50 from his wages in connection with *New Century v. Burkett*.

170.    Between his first and second court dates, Mr. Burkett traveled to Bronx Civil Court to meet with CLARO. On or around June 19, 2018, Mr. Burkett, with CLARO's assistance, filed and served a *pro se* supplemental affidavit in support of his Motion to Vacate.

171.    On June 26, 2018, the second court date for Mr. Burkett's motion, Mr. Burkett obtained a limited-scope volunteer attorney through the New York City Civil Court's Volunteer Lawyer for a Day ("VLFD") program. Mr. Burkett's VLFD attorney asked H&A's attorney to vacate the judgment because H&A had not produced an affidavit of service.

172.    H&A refused. *New Century v. Burkett* was adjourned for a third court date.

173.    On July 5, 2018, Mr. Burkett obtained the court file and viewed the affidavit of service. It listed an incorrect address, 2154 Grand.

174.    On July 30, 2018, H&A sent Mr. Burkett a Stipulation containing the Release and the provision allowing Defendants to retain his funds, *supra*, ¶¶ 126-27, and a letter stating:

Due to the passage of time beyond the retention period of the original creditor, and inability to obtain witnesses and documents to establish the underlying claim, our client has decided to discontinue the above-referenced matter against you. Enclosed, please find three (3) copies of a Mutual Vacating Judgment, Discontinuance With Prejudice & General Release with regard to [*New Century v. Burkett*]. We wanted to advise you of this so that you may avoid the further inconvenience of coming to Court.

175.    On September 6, 2018, now advised by current counsel, Mr. Burkett responded by letter to H&A. He stated that he did not live at the service address, and attached documentary proof obtained from the New York City Housing Authority (NYCHA) that he resided at 2720 Broadway before and after the date of service.

176.    Mr. Burkett enclosed a signed copy of the Stipulation in which he had crossed out the Release and the provision allowing Defendants to retain the collected funds.

177.    In October 2018, Mr. Burkett, with the assistance of current counsel, served a second supplemental affidavit in support of his Motion to Vacate on H&A. Mr. Burkett attached eight documents proving that the service address was incorrect, including two Proofs of Address, two paystubs, and his son's school enrollment record.

178.    On October 16, 2018, H&A told Mr. Burkett by phone that he was "making things too complicated" and that H&A would send a new agreement that he should sign so that he would not have to attend his third court date.

179.    That same day, H&A faxed Mr. Burkett a letter identical in substance to its July 30, 2018 letter, and attached another Stipulation that contained the Release.

180.    On October 17, 2018, Mr. Burkett faxed H&A a signed copy of the Stipulation in which he again crossed out the Release, and the eight proof of address documents.

181.    Later that day, H&A stated to Mr. Burkett by phone that they would not sign the Stipulation with the Release crossed out and stated, in sum and substance, "we'll see you in

25

court."

182.    On October 18, 2018, the third court date in *New Century v. Burkett*, current counsel represented Mr. Burkett through VFLD. The H&A attorney again sought Mr. Burkett's signature on a Stipulation that contained the Release. The H&A attorney made the false statement that signing the agreement would be in Mr. Burkett's best interest because if he did not sign it, he would have to return to court multiple times.

183.    Mr. Burkett reiterated that he would not sign anything containing the Release.

184.    That day, the judge granted Mr. Burkett's Motion to Vacate because Mr. Burkett "provided sufficient evidence to indicate he was not living at location of service of process at time of service." The judge's order directed that "[a]ll monies collected shall be returned within 30 days."

185.    Defendants did not return, or take any steps to return, the $343.50 garnished from Mr. Burkett within 30 days of the judge's order.

186.    Only after Mr. Burkett's current counsel made over a dozen phone calls to Mr. Burkett's employer and the city marshal was the $343.50 returned to Mr. Burkett in early January 2019.

187.    As a result of Defendants' actions, Mr. Burkett has experienced emotional and financial harm. Mr. Burkett spent time and money to appear at multiple court dates and otherwise challenge the execution, including for postage, transportation, and photocopying, among other expenses. Because he is an hourly employee, he lost wages each time he had to miss work to go to court or meetings, and, as a result, fell behind on his rent payments for two to three months. Mr. Burkett lost access to the garnished funds for more than six months. Mr.

Burkett also experienced emotional distress; the sudden garnishment of his wages and the many court appearances made him feel powerless and angry.

***Guillaume Foss***

188.    Plaintiff Guillaume Foss is a forty-two year old resident of Manhattan, New York.

189.    On or after August 7, 2017, Mr. Foss received a Notice of Garnishment and income execution from New York City Marshal Martin A. Bienstock.

190.    The documents stated that Mr. Foss owed $2,566.08, plus over $3,500 in interest and fees, to satisfy a judgment in *Platinum Financial Services Corp. v. Guillaume Foss* ("*Platinum v. Foss II*"), Index Number 76526-02/QU, in New York City Civil Court, Queens County.

191.    On or after November 22, 2017, Mr. Foss received a second Notice of Garnishment and income execution from Marshal Bienstock.

192.    The documents stated that Mr. Foss owed $2,103.20, plus approximately $3,000 in interest and fees, to satisfy a judgment in *Platinum Financial Services Corp. v. Guillaume Foss* ("*Platinum v. Foss I*"), Index Number 74312-02/QU, in New York City Civil Court, Queens County.

193.    Both income executions stated that the debts were owed to Palisades Collection, LLC ("Palisades Collection"). Both income executions were signed by Houslanger.

194.    Mr. Foss had never heard of *Platinum v. Foss I* or *Platinum v. Foss II*. He was never served with a summons and complaint in either action. He had no other notice of the actions or the judgments, and never received notices of assignment of judgment, changes of attorney, or validation notices. Mr. Foss had never heard of Platinum Financial Services Corporation ("Platinum"), Palisades Collection, or Defendants.

27

195.    Unbeknownst to Mr. Foss, Platinum had filed two lawsuits against him in 2002: *Platinum v. Foss I* on July 24, 2002, as an assignee of an alleged credit card debt from Direct Merchants Bank, and *Platinum v. Foss II* on August 1, 2002, as an assignee of alleged credit card debt from Providian Bank.

196.    The law firm Upton, Cohen & Slamowitz represented Platinum in *Platinum v. Foss I* and *Platinum v. Foss II*.

197.    On December 13, 2002, a default judgment was entered against Mr. Foss in *Platinum v. Foss I* in the amount of $2,034.20.

198.    On April 30, 2003, a default judgment was entered against Mr. Foss in *Platinum v. Foss II* in the amount of $2,474.08.

199.    In support of its application for default judgment in *Platinum v. Foss I*, Platinum submitted an affidavit of service in which process server Elham Shatara swore that he served Mr. Foss in a case titled *Midland Credit Management, Inc. v. Guillaume Foss and Tina R Capitly*,  by handing the papers to "Jane Doe," a "cotenant" of Mr. Foss who "refused" to give her name, at Mr. Foss's residence at 2721 23rd Street, Apartment 2E, Astoria, New York 11102 ("2721 23rd Street") on July 12, 2002, and mailing the summons and complaint to the same address.

200.    The affidavit of service was facially defective.

201.    In support of its application for default judgment in *Platinum v. Foss II*, Platinum submitted an affidavit of service in which Shatara swore that he served Mr. Foss on July 19, 2002, by affixing a copy of the summons and complaint to the door of 2721 23rd Street and mailing the summons and complaint to the same address. He swore that he had previously attempted to serve Mr. Foss at 2721 23rd Street on July 15, July 16, July 17, and July 18, but was "unable, with due diligence, to find" him or another person of suitable age and discretion.

202.    Mr. Foss was never served in either case. He believes that he did not live at 2721 23rd Street in mid-July, 2002. He recalls moving away from that address at some point in July 2002, but cannot identify the precise date now, more than fifteen years later.

203.    According to Defendants, both judgments against Mr. Foss were sold three times in 2007: from Platinum to Palisades Acquisition XV, LLC; from Palisades Acquisition XV, LLC to Palisades Acquisition XVI, LLC; and from Palisades Acquisition XVI, LLC to Palisades Collection.

204.    On information and belief, Palisades Collection retained H&A to execute on the judgments.

205.    On August 3, 2017, Houslanger issued the *Platinum v. Foss II* income execution later received by Mr. Foss.

206.    On November 16, 2017, Houslanger issued the *Platinum v. Foss I* income execution later received by Mr. Foss.

207.    Both income executions stated incorrect judgment amounts.

208.    On information and belief, before issuing the income executions, neither Houslanger nor anyone at H&A possessed or reviewed the *Platinum v. Foss I* or *Platinum v. Foss II* judgments, affidavits of service, documents establishing a chain of title for the judgments, or the case files.

209.    Mr. Foss did not know how to challenge the income executions.

210.    From October to December 2017, Mr. Foss's employer garnished a total of $1,153.85 from his wages in connection with *Platinum v. Foss II*.

211.    On information and belief, no money was garnished from Mr. Foss in connection with *Platinum v. Foss I* due to the garnishment in *Platinum v. Foss II*.

212.    On December 1, 2017, Mr. Foss filed in Queens Civil Court *pro se* Motions to Vacate the *Platinum v. Foss I* and *Platinum v. Foss II* judgments, with assistance from CLARO. He also filed affidavits in each case stating that he was never served and that he first learned of the lawsuits from the executions he had recently received. Mr. Foss could not review any documents in the court files because they were being held in the archive.

213.    On December 14, 2017, the first court date for Mr. Foss's motions, Bryks filed and served Oppositions to Mr. Foss's Motions, sworn under penalty of perjury.

214.    On information and belief, neither Bryks nor anyone at H&A possessed or reviewed the judgments, the affidavits of service, the documents establishing chains of title, or the case files in *Platinum v. Foss I* and *Platinum v. Foss II* prior to filing the Oppositions.

215.    The Oppositions did not attach the affidavit of service. The Oppositions did not contain any specific facts regarding service, such as how or when Mr. Foss was allegedly served. Nonetheless, in each Opposition, Bryks stated that "[u]pon information and belief, [Mr. Foss] was properly served in this matter."

216.    These representations were false. Mr. Foss was never served in either action.

217.    If Bryks had reviewed the affidavit of service in *Platinum v. Foss I*, he would have seen that it was deficient on its face, as the process server swore that he served the summons and complaint in a different case brought by a different debt buyer.

218.    In each Opposition, Bryks stated that "[a] copy of the Judgment is unavailable to be attached to this opposition." Nonetheless, in *Platinum v. Foss I*, Bryks stated that the judgment amount was $2,103.20. In *Platinum v. Foss II*, Bryks stated that the judgment amount was $2,566.09. Each Opposition stated that "[a]ny and all . . . garnishment of wages[] resulted from proper execution of a judgment of this Court, lawfully obtained and issued therefrom."

219.    These representations were false. Each judgment amount was incorrect. The judgments were not lawfully obtained, because Mr. Foss was never served. The executions were not proper, because, among other things, Defendants had no proof of the chains of title, and had not sent the required notices.

220.    Each Opposition further stated that Palisades Collection was the "successor" to Platinum. In support of this statement, Bryks attached, in each Opposition, three bills of sale: one dated March 5, 2007 from Platinum to Palisades Acquisition XV, another with the same date from Palisades Acquisition XV to Palisades Acquisition XVI, and a third on October 11, 2007 from Palisades XVI to Palisades LLC.

221.    The bills of sale did not establish that Palisades or Defendants had the authority to execute on the judgments. Among other problems, one bill of sale purports to transfer "Accounts" listed on a "Schedule" that is not provided; two bills of sale are not signed by both parties; and the bill of sale purporting to assign the judgment from Palisades Acquisition XVI, LLC to Palisades Collection states that the "receivables" being assigned "were purchased by the Seller from Great Seneca Financial Corporation."

222.    The Oppositions further stated that "by virtue of" income executions issued against Mr. Foss in 2011, Mr. Foss "received actual . . . notice of the debt but failed to act timely."

223.    These statements were false. The 2011 income executions were never sent to Mr. Foss. Defendants sent these executions to a former employer of Mr. Foss, who informed Defendants that Mr. Foss no longer worked there.

224.    Each of Bryks's representations in the Oppositions was made without a reasonable basis and without having undertaken any investigation that could have led to a good

faith belief in its truth.

225.    *Platinum v. Foss I* and *Platinum v. Foss II* were adjourned for a second court date.

226.    On February 1, 2018, the second court date for Mr. Foss's motions, Mr. Foss's VLFD attorney asked H&A's attorney to vacate both judgments because H&A had not produced affidavits of service..

227.    H&A refused.

228.    The judge ordered H&A to serve on Mr. Foss, within one week, an amended Opposition to Mr. Foss's motion in *Platinum v. Foss II* that included an affidavit of service.

229.    *Platinum v. Foss I* and *Platinum v. Foss II* were adjourned for a third court date.

230.    On March 29, 2018, the third court date for Mr. Foss's motions, H&A still had not produced an affidavit of service in *Platinum v. Foss I* or an amended Opposition in *Platinum v. Foss II*.

231.    Mr. Foss's VLFD attorney again asked H&A's attorney to vacate both judgments. H&A again refused.

232.    On May 9, 2018, the judge granted both of Mr. Foss's Motions to Vacate because H&A had "failed to provide proof of service."  The judge's orders directed that "any funds collected in connection with [each case], including fees, shall be returned to" Mr. Foss.

233.    H&A did not return, or take any steps to return, the garnished funds to Mr. Foss.

234.    On November 28, 2018, Mr. Foss faxed a letter to H&A asking that the garnished funds be returned and that H&A respond within one week.

235.    H&A never responded.

236.    On December 7, 2018, Mr. Foss called H&A to ask why the funds had not been returned. H&A falsely told him that the amount garnished was only approximately $600.

237.    Later that same day, after confirming that the total garnished was in fact $1,153.85, Mr. Foss called H&A again to demand that the full $1,153.85 be returned.

238.    On this call, H&A acknowledged that $1,153.85 had been garnished.

239.    H&A falsely told Mr. Foss that H&A had sent the judge's order to the marshal to effectuate the return of his funds.

240.    On December 12, 2018, Mr. Foss called the marshal's office and learned that H&A had not sent the judge's order to the marshal. Mr. Foss faxed the judge's order to the marshal himself.

241.    Mr. Foss finally received a return of the $1,153.85 in early January 2019.

242.    As a result of Defendants' actions, Mr. Foss has experienced emotional and financial harm. Mr. Foss spent time and money to appear at multiple court dates and otherwise challenge the execution, including for postage, transportation, and photocopying, among other expenses. Mr. Foss lives in upper Manhattan, over an hour from the Queens Civil Court. He missed work each time he went to court or meetings, and had to make up the missed work by working later in the evening, and so he missed spending time with his family. Mr. Foss lost access to the garnished funds, over $1000, for more than a year, and as a result had to delay paying some of his bills.

*Virginia Ortiz*

243.    Plaintiff Virginia Ortiz is a thirty-seven year old resident of Brooklyn, New York. Ms. Ortiz works as a writer and editor.

244.    On or after May 29, 2018, Ms. Ortiz received a Notice of Garnishment and income execution from New York City Marshal Ronald Moses.

245.    The documents stated that Ms. Ortiz owed $2,233.84, plus nearly $2,500 in interest and fees, to satisfy a judgment in *Pinpoint Technologies, LLC v. Virginia V Ortiz* ("*Pinpoint v. Ortiz*"), Index Number 9325-07/QU, in New York City Civil Court, Queens County.

246.    The income execution stated that the debt was owed to Libra Equities, LLC ("Libra"). The income execution was signed by Houslanger.

247.    Ms. Ortiz had never heard of *Pinpoint v. Ortiz*. She was never served with a summons and complaint in that action. She had no other notice of the action or the judgment, and never received an assignment of judgment, a change of attorney form, or a validation notice. Ms. Ortiz had never heard of Libra, Pinpoint Technologies, LLC ("Pinpoint"), or Defendants.

248.    Unbeknownst to Ms. Ortiz, Pinpoint had filed *Pinpoint v. Ortiz* against her on January 17, 2007, as an assignee of an alleged debt from Bally's Total Fitness ("Bally's").

249.    The law firm Mel S. Harris and Associates, LLC represented Pinpoint in *Pinpoint v. Ortiz*.

250.    On April 20, 2007, a default judgment was entered against Ms. Ortiz in the amount of $2,233.84.

251.    In support of its application for default judgment, Pinpoint submitted an affidavit of service in which process server Michael Mosquera swore that he served Ms. Ortiz on February 3, 2007 at Ms. Ortiz's residence at 16410 84th Avenue, Apartment 2A, Jamaica, New York 11432 ("16410 84th Avenue") by handing the papers to "Mr. Alejandro," an individual with an "accent," and mailing the summons and complaint to the same address.

252.    However, Ms. Ortiz moved away from 16410 84th Avenue in 2002. At the time of alleged service, Ms. Ortiz lived at 58-56 Maspeth Avenue, Maspeth, New York 11378.

253. According to Defendants, the *Pinpoint v. Ortiz* judgment was sold from Pinpoint to Libra in 2014.

254. No assignment of judgment was filed in *Pinpoint v. Ortiz*.

255. On information and belief, Libra retained H&A to execute on the judgment.

256. On May 23, 2018, Houslanger issued the income execution later received by Ms. Ortiz.

257. On information and belief, before issuing the income execution neither Houslanger nor anyone at H&A possessed or reviewed the *Pinpoint v. Ortiz* judgment, affidavit of service, documents establishing a chain of title for the judgment, or the case file.

258. Ms. Ortiz did not know how to challenge the income execution, so she called the office of Marshal Ronald Moses. That office instructed Ms. Ortiz to call H&A.

259. Ms. Ortiz called H&A. They told her that the purported debt was from Bally's.

260. H&A offered to settle for approximately the original judgment amount, $2,233.84. Ms. Ortiz stated that she would not settle, because she did not owe the money.

261. On June 12, 2018, Ms. Ortiz filed in Queens Civil Court a *pro se* Motion to Vacate the *Pinpoint v. Ortiz* judgment. She also filed an affidavit stating that she "was not served a summons and complaint" and that she first learned of the lawsuit from the execution she had recently received. Ms. Ortiz could not review any documents in the court file because it was being held in the archive.

262. On June 20, 2018, the first court date for Ms. Ortiz's motion, Bryks filed and served an Opposition, sworn under penalty of perjury.

263. On information and belief, neither Bryks nor anyone at H&A possessed or reviewed the judgment, the affidavit of service, the documents establishing chain of title, or the

case file in *Pinpoint v. Ortiz* prior to filing the Opposition.

264.    The Opposition did not attach the affidavit of service. In the Opposition, Bryks stated that "[a] copy of the Affidavit of Service is unavailable to be attached to this opposition." The Opposition did not contain any specific facts regarding service, such as how or when Ms. Ortiz was allegedly served.

265.    Nonetheless, in the Opposition, Bryks swore that "[u]pon information and belief, [Ms. Ortiz] was properly served in this matter."

266.    This representation was false. Ms. Ortiz was never served.

267.    In the Opposition, Bryks stated that "[a] copy of the Judgment is unavailable to be attached to this opposition."

268.    Nonetheless, the Opposition stated that "[a]ny and all . . . garnishment of wages[] resulted from the proper execution of a judgment of this Court, lawfully obtained and issued therefrom."

269.    This representation was false. The judgment was not lawfully obtained, because Ms. Ortiz was never served. The execution was not proper, because, among other things, Defendants had no proof of the chain of title, and had not sent the required notices.

270.    The Opposition further stated that Libra was the "successor" to Pinpoint. In support of this statement, Bryks attached a notice of assignment signed by Michael Young indicating that the debt was owned by Libra.

271.    This document did not establish Libra's or Defendants' authority to execute on the judgment. *See In re Pinpoint Techs., LLC*, 5 N.Y.S.3d 329 (N.Y.C. Civ. Ct. 2014) (explaining that notices of assignment identical to the one submitted in *Pinpoint v. Ortiz* are invalid).

272.    Each of Bryks's representations in the Opposition was made without a reasonable basis and without having undertaken any investigation that could have led to a good faith belief in its truth.

273.    Defendants unduly prolonged the legal proceedings against Ms. Ortiz. On information and belief, Defendants did so to induce Ms. Ortiz to drop her challenge to the execution or enter a settlement favorable to Defendants.

274.    *Pinpoint v. Ortiz* was adjourned for a second court date.

275.    Between her second and third court dates, Ms. Ortiz traveled to Queens Civil Court twice, to obtain the court file and to meet with CLARO. Ms. Ortiz saw that the affidavit of service in the court file listed an incorrect address, 16410 84th Avenue.

276.    On or around September 7, 2018, Ms. Ortiz, with CLARO's assistance, filed and served a *pro se* supplemental affidavit in support of her Motion to Vacate.

277.    On September 17, 2018, the second court date for Ms. Ortiz's motion, H&A filed an amended Opposition that attached an affidavit of service.

278.    *Pinpoint v. Ortiz* was adjourned for a third court date.

279.    Ms. Ortiz, with the assistance of current counsel, served on H&A a second supplemental affidavit in support of her Motion to Vacate. Ms. Ortiz attached four documents proving that the service address was incorrect, including her child's birth certificate, medical records, and her 2007 W-2.

280.    On October 15, 2018, the third court date for Ms. Ortiz's motion, Ms. Ortiz's VLFD attorney asked H&A's attorney to vacate the judgment. H&A refused.

281.    On December 13, 2018, the judge issued an order stating that Ms. Ortiz had "submitted sufficient documentation to controvert service" and ordering an evidentiary hearing.

282.    On January 3, 2019, H&A sent Ms. Ortiz a Stipulation containing the Release and

the provision allowing Defendants to retain his funds, *supra*, ¶¶ 126-27, and a letter stating:

> Based on the passage of time and the inability to secure the process server for the
> [evidentiary] hearing, our client has decided to discontinue the above-referenced
> matter against you. Enclosed, please find three (3) copies of a Mutual Stipulation
> Vacating Judgment, Discontinuance With Prejudice & General Release with
> regard to [*Pinpoint v. Ortiz*]. We wanted to advise you of this so that you may
> avoid the further inconvenience of coming to Court.

283.    Ms. Ortiz responded by letter to H&A. She stated that she did not live at the

service address, and attached the four proof of address documents.

284.    Ms. Ortiz enclosed a signed copy of the Stipulation in which she had crossed out

the Release.

285.    Less than a week before the scheduled evidentiary hearing, current counsel called

Bryks on behalf of Ms. Ortiz to ask whether H&A had received Ms. Ortiz's letter. Bryks stated

that H&A had received the letter and would sign the modified Stipulation.

286.    On February 4, 2019, the judgment against Ms. Ortiz was vacated and the case

was dismissed.

287.    As a result of Defendants' actions, Ms. Ortiz has experienced emotional and

financial harm. Ms. Ortiz spent time and money to appear at multiple court dates and otherwise

challenge the execution, including for postage, transportation, and photocopying, among other

expenses. Ms. Ortiz had to take a full day off work each time she went to court or a meeting and,

because she is an hourly employee, she was not paid for the time she missed and had to use

vacation time. Ms. Ortiz lives in Brooklyn, over an hour away from Queens Civil Court, and had

to pay for a taxi each time. Ms. Ortiz also experienced emotional distress; the sudden threat of

garnishment of her wages and the many court appearances made her feel confused and upset.

## CLASS ACTION ALLEGATIONS

288.    Plaintiffs bring this action, pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and as representatives of a Class consisting of:

> All individuals against whom Defendants executed on a judgment obtained in New York City Civil Court on behalf of a judgment creditor that did not originally obtain the judgment.

289.    The class is so numerous that joinder of all Class Members in this action would be impracticable.

290.    Defendants attempt to collect debts from 5,000 New York City consumers per year. On information and belief, Defendants execute against a substantial portion of these consumers on judgments obtained by judgment creditors that did not originally obtain the judgments.

291.    On information and belief, approximately a dozen consumers file Motions to Vacate such judgments each month.

292.    The precise number and identity of Class Members is contained within Defendants' business and litigation records.

293.    Defendants have acted and continue to act in a similar manner toward to each member of the Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

294.    Class members present common questions of law and fact and these questions predominate over any individual questions.

295.    The common questions of fact include, but are not limited to: what review, if any, Defendants conducted before issuing wage garnishments and bank restraints; what review, if

any, Defendants conducted before opposing Motions to Vacate; whether Defendants prolonged

legal proceedings in bad faith; and whether Defendants made false statements in court filings.

296.    The common questions of law include, but are not limited to: whether Defendants

conducted meaningful review before issuing wage garnishments and bank restraints; whether

Defendants conducted meaningful review before opposing Motions to Vacate; and whether

Defendants' collection practices are unfair, deceptive, or misleading in violation of the FDCPA,

the New York G.B.L. § 349, and the New York Judiciary Law.

297.    The claims of the named Plaintiffs are typical of the claims of the Class.

Defendants executed against Plaintiffs and Class Members on behalf of judgment buyers and

acted in the same manner toward the Class as a whole, including by: preparing and issuing nearly

identical form execution documents; preparing and filing nearly identical form oppositions to

Motions to Vacate; and preparing and sending form Releases.

298.    The Named Plaintiffs will adequately and fairly protect the interests of all

members of the proposed Class because they have the requisite personal interest in the outcome

of this litigation and have no interest antagonistic to any member of the proposed Class.

299.    The Named Plaintiffs are represented by the New York Legal Assistance Group

("NYLAG"). Attorneys at NYLAG are experienced in complex federal litigation, class action

litigation, and consumer defense litigation.

300.    A class action is the superior method for a fair and efficient adjudication of this

matter in that Defendants have acted in the same manner toward the Class as a whole and a class

action will avoid numerous separate actions by Class Members that would unduly burden the

courts and create the possibility of inconsistent decisions. Final injunctive and declaratory relief

is thus appropriate as to the Class as a whole.

301.    Moreover, it would be impracticable for Class Members, who are, on information and belief, primarily low-income individuals, to obtain legal counsel on an individual basis to bring claims of the type raised in this action. Hence their rights under the law may well be meaningless without certification of a class action seeking common redress.

### FIRST CAUSE OF ACTION
Violation of the FDCPA, 15 U.S.C. §§ 1629e, 1692f, 1692g
Against All Defendants

302.    The FDCPA, 15 U.S.C. § 1692e, prohibits a debt collector from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt."

303.    The FDCPA, 15 U.S.C. § 1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

304.    The FDCPA, 15 U.S.C. § 1692g, requires that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing," among other things, a statement of the consumer's right to dispute the debt and to obtain the name and address of the original creditor.

305.    Defendants violated the FDCPA, §§ 1692e, 1692f, 1692g, by making false, deceptive, and misleading representations, engaging in unfair and unconscionable practices, and failing to send required notices. Defendants' violations included, but were not limited to:

a.  Threatening to execute on, and executing on, invalid judgments;
b.  Executing on judgments against Class Members without undertaking a meaningful attorney review of the case;
c.  Executing on judgments against Class Members without filing and serving an assignment of judgment;
d.  Executing on judgments against Class Members without filing and serving a change of attorney form;
e.  Failing to send a validation notice;

41

f.   Filing Oppositions to Class Members' Motions to Vacate without undertaking a meaningful attorney review of the case;

g.   Making false and misleading statements, including in Oppositions to Class Members' Motions to Vacate;

h.   In bad faith, unduly prolonging legal proceedings and requiring Class Members to appear at unnecessary court dates;

i.   Seeking Releases from Class Members to insulate themselves from liability from unlawful actions; and

j.   Refusing to return funds to Class Members in contravention of court orders.

306.    Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiffs and putative Class Members and unless enjoined, will cause further irreparable injury.

307.    As a direct and proximate result of Defendants' violations, Plaintiffs and Class Members have suffered compensable harm and are entitled to recover actual and statutory damages, costs, and attorneys' fees.

**SECOND CAUSE OF ACTION**
Violation of N.Y. Gen. Bus. § 349
Against All Defendants

308.    New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business . . . in this state" and provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name" for injunctive relief, damages, and attorneys' fees.

309.    Defendants violated N.Y. Gen. Bus. § 349 by engaging in deceptive acts and practices in the conduct of their business. Defendants' violations included, but were not limited to:

a.   Threatening to execute on, and executing on, invalid judgments;

b.   Executing on judgments against Class Members without undertaking a meaningful attorney review of the case;

c.   Executing on judgments against Class Members without filing and serving an assignment of judgment;

42

d.  Executing on judgments against Class Members without filing and serving a change of attorney form;

e.  Failing to send a validation notice;

f.  Filing Oppositions to Class Members' Motions to Vacate without undertaking a meaningful attorney review of the case;

g.  Making false and misleading statements, including in Oppositions to Class Members' Motions to Vacate;

h.  In bad faith, unduly prolonging legal proceedings and requiring Class Members to appear at unnecessary court dates;

i.  Seeking Releases from Class Members to insulate themselves from liability from unlawful actions; and

j.  Refusing to return funds to Class Members in contravention of court orders.

310.    Defendants' actions were consumer oriented and had a broad impact on New York consumers at large.

311.    Defendants committed the above-described acts willfully and/or knowingly.

312.    Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiffs and putative Class Members and unless enjoined, will cause further irreparable injury.

313.    As a direct and proximate result of Defendants' violations, Plaintiffs and putative Class Members have suffered compensable harm and are entitled to recover actual and treble damages, costs, and attorneys' fees.

### **THIRD CAUSE OF ACTION**
Violation of N.Y. Jud. Law § 487
Against Defendants Houslanger and Bryks

314.    New York Judiciary Law § 487 states that "[a]n attorney or counselor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . is guilty of misdemeanor [and] . . . forfeits to the party injured treble damages, to be recovered in a civil action."

315.    Defendants violated New York Judiciary Law § 487 by engaging in deceit or collusion, or consenting to deceit or collusion, with the intent to deceive courts and opposing parties. Defendants' violations included, but were not limited to:

a.    Threatening to execute on, and executing on, invalid judgments;

b.    Executing on judgments against Class Members without undertaking a meaningful attorney review of the case;

c.    Executing on judgments against Class Members without filing and serving an assignment of judgment;

d.    Executing on judgments against Class Members without filing and serving a change of attorney form;

e.    Failing to send a validation notice;

f.    Filing Oppositions to Class Members' Motions to Vacate without undertaking a meaningful attorney review of the case;

g.    Making false and misleading statements, including in Oppositions to Class Members' Motions to Vacate;

h.    In bad faith, unduly prolonging legal proceedings and requiring Class Members to appear at unnecessary court dates;

i.    Seeking Releases from Class Members to insulate themselves from liability from unlawful actions; and

j.    Refusing to return funds to Class Members in contravention of court orders.

316.    Defendants' conduct constituted a chronic pattern of extreme and egregious deceit.

317.    Defendants committed the above-described acts willfully and/or knowingly.

318.    Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiffs and putative Class Members and unless enjoined, will cause further irreparable injury.

319.    As a direct and proximate result of these violations of New York Judiciary Law § 487, Plaintiffs and putative Class Members have suffered compensable harm and are entitled to recover actual and treble damages.

WHEREFORE, Plaintiffs request that this Court enter judgment jointly and severally as against all Defendants:

a.  Certifying this case as a class action, pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, with a Class defined as:

> All individuals against whom Defendants executed on a judgment obtained in New York City Civil Court on behalf of a judgment creditor that did not originally obtain the judgment.

b.  Declaring that Defendants have committed the violations of law alleged in this action;

c.  Enjoining and directing all Defendants to cease engaging in debt collection practices that violate the FDCPA; New York General Business Law § 349; and New York Judiciary Law § 487;

d.  Awarding to Plaintiffs and the putative Class:

   i.  actual and/or compensatory damages against all Defendants in an amount to be proven at trial;

   ii.  statutory damages pursuant to the FDCPA;

   iii.  treble damages pursuant to N.Y. G.B.L. § 349(h) and N.Y. Jud. Law § 487;

   iv.  disbursements, costs, and attorneys' fees pursuant to the FDCPA and N.Y. G.B.L. § 349; and

e.  Granting such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: April 18, 2019
New York, New York


Respectfully submitted,

Beth E. Goldman, Esq.
New York Legal Assistance Group
7 Hanover Square
New York, NY 10004
(212) 613-5000

By:

_____
Danielle Tarantolo, of counsel
Jane Greengold Stevens, of counsel
Thalia Julme, of counsel
Jessica Ranucci, of counsel
(212) 613-6551
dtarantolo@nylag.org

*Counsel for Plaintiffs*